# SANTIAGO BACA, Appellant, v. BOARD OF COUNTY COMMISSIONERS BERNALILLO COUNTY.

### SYLLABUS BY THE COURT.

1.  Sec. 2909, Comp. Laws 1884, Chapter 95, Laws 1891 and Chapter 61, Laws of 1893, construed.

2.  STATUTES—CONSTRUCTION—WORDS ERRONEOUSLY USED.—Where one word has been erroneously used in a statute for another and the context affords the means of correction the proper word will be deemed substituted.

3.  STATUTES—REPUGNANCY—REPEAL.—Where two statutes have the same object and relate to the same subject, if the later Act is repugnant to the former, the former is to the extent of the repugnancy repealed by implication, even in the absence of the repealing clause in the later Act.

4.  ASSESSORS—COMMISSIONS.—Under chapter 61, Laws of 1893, assessors are not entitled to commissions on assessments of taxes not shown to be collectible, and are entitled to commission on taxes collected for the school fund.

*Appeal* from the District Court of Bernalillo county, Second Judicial District.   Remanded with instructions.

Statement of facts by the court.

This suit was brought by appellant as plaintiff below against appellee for an accounting as to the amount due him for fees as assessor of Bernalillo county for the years 1893 and 1894, and for judgment for the amount found to be due upon such accounting.   Issue was joined and upon proofs the master found the following facts:

"2.   That the total taxes assessed in said county for the year 1893, was $190,505.78.   3.   That the total taxes assessed upon property in said county for the year 1894, was $179,-916.99.   4.   That said returns and assessments for said years 1893 and 1894, were duly approved by the Board of County

Commissioners and the assessment rolls for said years duly accepted. 5. That the assessments for school purposes made in 1893 amounted to $20,854.48. 6. That the assessments made for school purposes in 1894, amounted to $27,451.86. 7. That there was assessed for general county purposes in 1893 the sum of $66,293.02 and in 1894, the sum of $56,280.63, all other taxes assessed for those years having been for the city of Albuquerque, the town of Gallup, and various other purposes as shown by the testimony. 8. That the plaintiff as said assessor was credited by defendant on the ledger of said Bernalillo county as follows: 1893, by com. on tax roll 1893, 2½ per cent., $190,505.78, $4,762.64, less 25 per cent. retained, $1,190.66, $3,571.98; 1894, by com. on tax roll, 1894, 2½ per cent., $179,916.99, $4,497.92, less 25 per cent. retained, $1,124.48, $3,373.44. That the said sums of $3,571.98 and $3,373.44 respectively were paid plaintiff, but that no part of said sums of $1,190.66 or $1,124.48, retained, has been paid. 9. That the delinquent taxes for the year 1893, remaining uncollected, are $23,197.84, and that only about $100 thereof is collectible. 10. That the delinquent taxes for the year 1894, remaining uncollected, are $45,360.08, and that only about $100 thereof is collectible."

The referee, upon the foregoing facts, found as a matter of law that the appellant was not entitled to recover and this finding was sustained by the court and the bill dismissed.

Three separate acts of the Territorial Legislature had been passed, down to and including the year 1894, making provision for fees of assessors. The first act on the subject is chapter 62, of the Laws of 1882, section 104 of which is compiled in the Compiled Laws of 1884, as section 2909, and is as follows: "The assessors shall receive the following commissions and fees: On the amount of taxes and licenses assessed and approved by the county commissioner, five per centum, to be paid as soon as the tax list is delivered to the collector for collection, one-half by the Territory and one-half by the county. But there shall be deducted from his subsequent commissions, or from any moneys that may be due him from the Territory

or county, or collected in an action upon his official bond, the amount of such commission upon all assessments found by the county commissioners, to have been erroneously made." The next act on the subject was chapter 95 of the Laws of 1891, an appropriation act, which, after making an appropriation to pay the Territorial part of assessors' fees, provides at page 104 as follows: "Provided, That the foregoing appropriation for compensation of assessors shall be to pay for the fiscal year commencing the first Monday in March, A. D. 1891: And provided further, that the said assessors shall only be paid on the amount of tax which shall be actually collected under their assessments and shall receive five per cent. of all licenses collected, unless otherwise hereafter provided by law, which said provision shall also be applicable to the county funds, and no assessor shall receive any compensation on account of any money assessed or collected for the school fund: * * *." The act, at page 229, contains an identical provision for the year 1892.

The next act on the subject was chapter 61, Laws of 1893, which, after making the appropriation for assessors, provides at page 93 as follows: "Provided, That the foregoing appropriation for the compensation of assessors shall be to pay for the fiscal year commencing on the first Monday of March, A. D. 1893: And provided, further, That the said assessors shall be paid on all their assessments as approved by the Board of County Commissioners or Board of Equalization, their compensation to become due when said rolls are completed, turned over and so approved, less 25 per cent., which is to be retained by the proper authority until the taxes so assessed are either collected or shown to be uncollectible." Identical provision is made for the year 1894, at page 99. The latter act contains no repealing clause, while the act of 1891, contains the general clause repealing all acts and parts of acts in conflict therewith.

ALONZO B. McMILLEN for appellant.

THOS. A. FINICAL for appellee.

PARKER, J.—The questions raised by this record involve a construction of the several statutes making provisions for the fees of assessors. It appears that the first act provided for a commission of five per cent. on the amount of the tax roll when delivered to the tax collector, one-half to be paid by the county and one-half by the Territory, and provided for a recovery back of the commission paid upon all taxes found to have been erroneously assessed. The first change came by the Act of 1891. This act provided that assessors should be paid only on actual collections and school taxes were excluded from the burden of payment of commissions. It thus appears that the Legislature in 1891, adopted an entirely new plan and scheme for the payment of assessors. Instead of paying them five per cent. on the amount of the tax roll as delivered to the collector, and trusting to the future to recover back any such commission on assessments erroneously made, it provided by appropriation a certain sum to pay the Territorial half of the commission in each county and provided that the commission should be paid by the Territory and county only upon the amounts of licenses and taxes, except school taxes, actually collected. It provided a new means of protecting the territory and the counties from imposition by means of erroneous assessments as well as a new measure of the amount to be paid. The act of 1893 made a further change and introduced features of both the former acts. No change is made in the rate of commissions to be paid. Nothing is said about commissions on school taxes nor taxes erroneously assessed, but the provision is for commissions on all assessments approved by the county commissioners or board of equalization. Provision is further made that upon such approval of the assessment roll, seventy-five per cent. of the commissions shall become due and the remaining twenty-five per cent. of the same shall become due when the taxes are collected or shown to be uncollectible. Presumably the Legislature had found both the former acts inadequate, inexpedient or unsatisfactory and adopted some of the features of each in their latest expression. The act contains two salient features: First, to

pay seventy-five per cent. of the commissions upon the approval of the assessment rolls; second, to retain the remaining twenty-five per cent. until the happening of certain contingencies. For what purpose is this retention of twenty-five per cent.? The only difficulty of answer arises, as we believe, from the misuse of the word "uncollectible." The first contingency, the collection of the taxes assessed is plain and in harmony with the whole theory of the act. The last contingency, the showing that the taxes are uncollectible, antagonizes the whole theory of the act as expressed down to that provision. For can it be said that the Legislature intended by the act to make the commissions all payable in any event, but simply intended to retain twenty-five per cent. thereof until it should be first demonstrated that, by reason of erroneous assessments, or otherwise, the taxes were uncollectible? This would lead to a palpable absurdity. Or, can it be said that the Legislature, after providing the safeguard against erroneous assessments by retention of a portion of the commissions until the taxes are collected, deliberately abandoned that safeguard by inserting the second contingency? The supposition that it could be capable of such folly, if not fraud upon the public, is not to be indulged. The retention of a part of the commission, therefore, was not for the purpose that a showing be first made of the uncollectibility of the taxes and the use of the word "uncollectible" was not intended. What word was intended? As before stated the manifest purpose of the act was to pay assessors three-fourths of their commission upon approval of the rolls and the balance as soon as they were shown to be entitled to it. The collection of the taxes, mentioned in the first contingency, would be the best evidence of the right. But if the taxes were due and collectible, then the right to the remaining commissions would, within the spirit of the act, be perfect. This seems to furnish the key to the word which the Legislature intended to use. It did not intend to use the word "uncollectible," but intended to use the word "collectible." Consequently this act of 1893 must be read accordingly.

This is what is sometimes called exceptional construction,

and we are not unmindful of the dangers attending the exercise
of such powers by the courts.  But, properly understood, and
exercised with due caution, it is not judicial
legislation, but is simply a method of arriving

STATUTES: con-
struction:
words erron-
eously used.

at legislative intent defectively expressed, and
the power and right are firmly established by
authority.   Thus in Arkansas the statute pro-
vided that the courts of a certain district should
commence in a certain county on the fourth Monday in Janu-
ary and July, in the next county on the third Monday after
the fourth Monday in January and July, and so on through
the list of counties.   But in regard to one of the coun-
ties it provided that court should begin on the fifth
Monday after the fifth Monday in January and July.
The court says:  "Renouncing the idea that the Legis-
lature intended to do an absurd and unconstitutional thing,
which would be the result of a literal construction, let
us inquire if there can be plainly discovered any other fixed
and certain intention."   The court then deduces from the
scope and object of the statute that the mistake in using fifth
instead of fourth is obvious, and further says:   "It is very true,
as a general rule of construction, that where the language of
an act is plain and unambiguous, the court must give it effect,
as it stands, or declare the law unconstitutional.   But this rule
is subject to much qualification, and does not apply to cases
of plain clerical errors, where it is obvious that the Legislature
did not intend to use the word as written, and it is further ap-
parent what word they did intend. A mistake of this nature may
be corrected by the courts, upon as sound principle as the
mistake in a deed.   It is not judicial legislation, nor judicial
interference with the legislative will.   It is in support of the
legislative will, and wholly distinct from the reprehensible prac-
tice of warping legislation to suit the views of the courts as
to correct policy.   The only conditions to be observed in the
exercise of the power of literal correction are, that the courts
should be thoroughly and honestly satisfied of the legislative
intent, irrespective of the policy of the act."   Haney v. State,

34 Ark. 263-269. An act of Congress provided that any person guilty of bribery, and who should be thereof convicted, should be liable to indictment, conviction and punishment. The court treated the word "and shall be thereof convicted" as surplusage and read the act as if they were not present. The court says "To suppose that Congress, while pretending to remedy such an evil, intended to pass an act which, by its own express words, was to be rendered wholly ineffective, under any possible circumstances, is to suppose Congress to be capable of deliberate folly if not of fraud upon the public." The lien statute of Nevada provided that "All foundrymen and boiler-makers, and all persons performing labor upon, or furnishing machinery or boilers * * * or other materials for the construction * * * of any mill, * * * shall have a lien on such mill, * * * for such work or labor done on such machinery * * * or other material furnished by each respectively * * *." The court says: "If this language be followed the right of lien is restricted to 'work and labor done on such machinery * * * or other materials' as the claimant may have furnished, and is withheld from persons furnishing labor without materials; and, also, from those furnishing the many articles of mining and milling supplies upon which no labor is bestowed by the vendor. The section, as it appears in the published statutes, and in the enrolled bills, is delusive. It purports to provide for two distinct classes of lien claimants, but in fact provides for only one class. No reason can be assigned why the pretended provisions for 'persons performing labor' should have been nullified by the inconsistent provision succeeding, nor for the senseless discrimination in favor of those laboring upon materials furnished by themselves, and against those laboring upon materials furnished by others. If the intention of the Legislature had been to change the law it is reasonable to presume that language fairly expressive of such intent would have been employed, and so radical a change would not have been brought about by the simple changing of the word 'or' to 'on.' Instead, however, of fairly expressing a change in the law, the phraseo-

logy of the statute, unless attributable to clerical mistake, is intentionally misleading. No intention to mislead can be indulged, and we conclude that the change arose through a clerical mistake, and should be disregarded." Gould v. Wise, 18 Nev. 253, 261, 262; see also Endlich Int. Stats., sections 295, 305; Sutherland Stat. Con., section 260; 23 Am. and Eng. Ency. Law, 421, citing numerous cases, most of which we have examined and find to support the principle invoked.

The next question presented is in regard to commissions on taxes levied for the school fund. As before stated, the act of 1893, contains no repealing clause. Of course, if the later act contains provisions utterly repugnant to those of former acts, so that they can not stand together, the later act, is equally effective by way of repeal with or without the repealing clause. STATUTES: repugnancy: repeal. The absence of the repealing clause, however, indicates an intention on the part of the Legislature not to interfere with existing legislation and imposes upon the courts, to a degree perhaps greater than if there were a repealing clause, the duty to construe the later act with the former legislation so that both may stand together and thus arrive at the legislative intent. Suth. Stat. Con., section 147.

We see nothing in the act of 1891 to indicate that it expired by limitation at the end of the two years covered by the appropriation. Consequently the provisions therein that exempted the school fund from payment of commission was in force at the time of the passage of the act of 1893, and is still in force unless repealed thereby. Reading these two acts together it seems clear that the objects of each are identical. The object of each act is to designate the assessments upon which commissions are to be paid, the time and extent of payment of the same. The latter designates all assessments, the former all except those for the school fund. There is irreconcilable conflict between the two provisions and, the latter prevailing, the exception in favor of the school funds in the former must be held to be repealed by implication.

From the foregoing views it appears that appellant has no right of recovery for commissions on taxes not shown to be collectible, but has a right of recovery for taxes collected for school purposes.

The cause will be remanded with instructions to set aside the judgment and to proceed in accordance herewith, and it is so ordered.

Mills, C. J., and McFie, J., concur; Crumpacker and Leland, JJ., did not sit.

---

[863.   August 23, 1900.]